<span style="color:red">**Exhibit A**</span>

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| **MAKENZIE SHAW**, a minor<br>by her Mother and Next Friend,<br>**VANIANA ROBINSON**<br>1706 Weston Avenue<br>Parkville, MD. 21234<br><br>*Plaintiff*,<br><br>v.<br><br>**US BANK N.A.**,<br>s/o The Corporation Trust, Inc.<br>2405 York Road, Suite 201<br>Timonium, MD. 21093<br><br>*Resident Agent:*<br>The Corporation Trust, Inc.<br>2405 York Road, Suite 201<br>Timonium, MD. 21093<br><br>and<br><br>**BLUE MOUNTAIN<br>INVESTMENTS, LLC,**<br>s/o United States Corporation Agents, Inc.<br>6569 Golden Ring Road<br>Rosedale, MD. 21237<br><br>*Resident Agent:*<br>United States Corporation Agents, Inc.<br>6569 Golden Ring Road<br>Rosedale, MD. 21237<br><br>*Defendants.* | CASE NO.: C-24-CV-25-003259 |

## **COMPLAINT AND ELECTION FOR JURY TRIAL**

COMES NOW, Makenzie Shaw, a minor (hereinafter "Plaintiff"), by and through her Mother and Next Friend, Vaniana Robinson, by and through her undersigned counsel, Brian S. Brown, Tess E. Russell, and Brown & Barron, LLC, and hereby sues Defendants US Bank N.A. and Blue Mountain Investments, LLC, and states as follows:

1

## **COUNT I-NEGLIGENCE - (1604 Chilton Street)**

1. That Makenzie Shaw (Date of Birth: January 15, 2011), a minor, resided and/or visited as an infant a residence located at 1604 Chilton Street ("the dwelling"), located in the City of Baltimore, during the period of 2011-2012.

2. That at all times relevant hereto, Defendants owned, controlled, managed, and/or operated the dwelling, either individually or through their agents, servants and/or employees.

3. During the time Plaintiff resided in and/or visited the dwelling, Defendants either caused or allowed the existence of chipping, peeling and/or flaking paint in the dwelling in violation of State and Local statutory codes, thereby rendering the dwelling dangerous and unfit for human habitation, especially for children of tender years.

4. During the time Plaintiff resided in or visited the dwelling, she ingested and consumed paint and dust containing lead and lead pigment thereby causing her to suffer the injuries, illness and infirmities herein alleged.

5. That the injuries, illness and infirmities of Plaintiff in her infancy were due alternatively or cumulatively to:

a) The negligence of Defendants and/or their agents in failing to warn Plaintiff or other residents of the property of the lead hazard which Defendants and/or their agents knew or should have known or had reason to know existed in the premises;

b) The negligence of Defendants in failing to maintain the premises free from chipping, peeling and/or flaking surfaces in violation of applicable State and Local statutes or ordinances;

c) The negligence of Defendants in failing to correct the condition of the loose, peeling, and/or flaking paint in the dwelling, when Defendants and/or their agents knew or had

reason to know that the paint on the interior and exterior of the dwelling contained chipping, peeling and/or flaking paint and Defendants and/or their agents had a reasonable opportunity to perform these repairs;

      d)      The negligence of Defendants in failing to promptly abate the chipping, peeling and/or flaking paint after notice, actual or constructive, of the same.

      e)      The negligence of Defendants and/or their agents in performing lead abatement in such a fashion as to increase, rather than decrease, Plaintiff's exposure to lead, including, but not limited to, performing the abatement while Plaintiff was still in the dwelling, failing to warn Plaintiff of the danger of the abatement and the need to vacate the dwelling, using abatement methods which foreseeably increased the lead dust in the premises, performing improper or inadequate clean up, leaving lead debris on the premises or in the vicinity of the premises accessible to children;

      f      The negligence of Defendant and/or their agents in failing to properly maintain the common areas of the dwelling so as to be free of loose, flaking lead-based paint, or lead paint easily accessible to children;

      g)      The negligence of Defendants and/or their agents in failing to adequately and properly inspect the dwelling for chipping, peeling, and/or flaking paint;

      h)      The negligence of Defendants and/or their agents in breaching their duty to Plaintiff to adequately and properly keep the dwelling free of chipping, peeling, and flaking paint.

      6.      At all times mentioned herein Defendants and/or their agents, servants or employees who owned and/or operated and/or managed the dwelling for Defendants were aware of the dangers of lead-based paint and that older houses often contain lead paint and that the instant premises were an older house.

7. Further, at the time of the child's poisoning the general state of knowledge was such—as a result of legislative enactments, medical research announcements, public health education undertaken by Federal, State and Local governments and public health organizations, general media publicity in print, radio and television, publicity by trade and professional organizations of property owners and publicity and insurance premium adjustments by the insurance industry—that property owners in general knew or had reason to know or should have known of the dangers of lead based paint in older houses to children.

8. In addition, Defendants and/or workmen/agents of Defendants visited the dwelling before and/or during the time Plaintiff was there and at that time, loose, flaking, deteriorated paint was obvious and easily visible to a passerby on the interior and/or exterior of the dwelling and was seen or should have been seen by the person or persons visiting the dwelling.

9. And Defendants were otherwise negligent.

10. That as a result of Defendants' negligence and of the ingestion and consumption by Plaintiff of the paint and paint dust in the dwelling, Plaintiff contracted and was caused to suffer harmful elevated blood lead levels.

11. That Plaintiff was exposed to the toxic conditions complained of herein on each and every instance in which Plaintiff was present at the dwelling. Each and every instance of exposure resulted in the introduction of lead into Plaintiff's bloodstream. The lead in Plaintiff's bloodstream caused immediate permanent cellular damage in each instance. Lead was deposited in Plaintiff's internal organs—spleen, liver, kidneys—and in Plaintiff's brain and bones. In addition to the aforesaid immediate injury, the lead also caused permanent continuing chronic injury. Lead, once introduced into the human body, is very, very slowly eliminated. There is medical evidence from autopsy that lead is never eliminated once introduced to the brain. Lead is

released from bone over years. Thus, leaving aside the actual period of exposure, even after exposure ceased, Plaintiff continued with lead throughout her body and during the entire following period, Plaintiff continued to suffer injury, disruption of normal bodily functions, and cellular destruction and harm.

12. Because of the disruption of normal cellular processes during critical stages of development, Plaintiff suffered severe and permanent brain damage. Plaintiff suffered physical pain and mental anguish. Plaintiff suffered such pain, anguish, embarrassment, and humiliation at a time in her development when Plaintiff was vulnerable to permanent psychological injury as a result. And such an injury did result. Plaintiff required treatment by physicians and follow-up care necessitating time and expense.

13. Throughout the period after Plaintiff's lead exposure, Plaintiff had endured the pains and humiliations and anguish caused by abnormal brain development and function as a result of brain damage from lead. Plaintiff is not the person dictated by her genetic and societal potential. Plaintiff suffered learning disabilities, shortened attention span, impulsivity, hyperactivity, extreme difficulty reading. Plaintiff's IQ has been diminished significantly. As a direct and proximate result of the underlying physical brain damage suffered, Plaintiff has developed behavioral and emotional problems.

14. As a result of the preceding, Plaintiff's employment prospects have been permanently altered, resulting in lifetime loss of earnings and diminution of earning capacity.

15. As a result of the preceding, Plaintiff suffered and will continue to suffer loss of the expected enjoyment of life and permanent alteration of reasonable pre-injury life expectations.

16. Plaintiff was otherwise injured and damaged.

17. Plaintiff avers that all of these damages were due to the wrongful and negligent acts and omissions of Defendants and with no negligence of Plaintiff contributing thereto.

WHEREFORE, Plaintiff Makenzie Shaw, a minor, by and through her Mother and Next Friend, Vaniana Robinson, hereby demands judgment against Defendants, for an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) plus interest and costs.

Respectfully submitted,

**BROWN & BARRON, LLC**

*/s/ Tess Russell*
Brian S. Brown, Esquire
AIS No. 8512010055
Tess E. Russell, Esquire
AIS No. 2311290106
7 St. Paul Street, Suite 800
Baltimore, Maryland 21202
T: (410) 547-0202
F: (410) 332-4509
bbrown@brownbarron.com
trussell@brownbarron.com
*Attorneys for Plaintiff*